UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

"AA," AN INFANT, BY HER MOTHER AND
NATURAL GUARDIAN, "BB,"

                        Plaintiff,

             v.

HAMMONDSPORT CENTRAL SCHOOL DISTRICT;
HAMMONDSPORT CENTRAL SCHOOL BOARD OF
EDUCATION; HAMMONDSPORT SUPERINTENDENT,
KYLE BOWER; ADAM PECK, Individually, and as agent
and/or employee of Hammondsport Central School District;
TAD ROUNDS, Individually, and as agent and/or
employee of Hammondsport Central School District;
DAVID FORSYTHE, Individually, and as agent and/or
employee of Hammondsport Central School District; and
TARA CHAPMAN, Individually, and as agent and/or
employee of Hammondsport Central School District;

                        Defendants.
_____

<u>DECISION AND ORDER</u>

19-CV-6551L

       Plaintiff "BB," on behalf of her minor daughter "AA," brings this action against defendants the Hammondsport Central School District (the "District") and its Board of Education, Superintendent Kyle Bower, and several District employees: teacher Adam Peck ("Peck"), employee Tad Rounds ("Rounds"), employee David Forsythe ("Forsythe"), and counselor Tara Chapman ("Chapman"). The defendants have collectively filed motions (Dkt. #15, #16) to dismiss the Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6), for failure to state a claim. For the reasons that follow, those motions are granted in part, and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the Amended Verified Complaint (Dkt. #14, hereafter the "complaint"), on or about February 9, 2018, AA, a fifteen-year-old student enrolled in the Hammondsport Central School District, was sexually harassed and physically assaulted over a 30-minute time span during a study hall. Her harasser was a nineteen-year-old student who sat beside her on a bean bag chair in an informal seating area, and proceeded to touch AA's private areas through her clothing without her consent, and to make unwelcome sexually explicit comments. AA stated that during the assault, she was "terrified and unable to move" or to ask for help. This conduct allegedly occurred within the line of sight of defendant Peck, the teacher assigned to supervise the study hall, but plaintiff alleges that Peck failed to notice or intervene.

The complaint avers that on February 12, 2018, AA reported what had happened to a teacher. The next day, AA was called into the office of counselor Chapman, and asked to re-report the assault. She was later summoned to the office of defendant Rounds, who indicated that he would let the incident "be a warning" for the harasser.

On February 19, 2018, plaintiff lodged a criminal complaint on behalf of AA, who was granted a temporary order of protection against the harasser. Nonetheless, plaintiff alleges that within a week, despite being fully aware of the protective order, the District placed AA back in the same study hall with her harasser, who ridiculed and mocked her in front of other students, and that the District thereafter permitted AA's harasser to freely enter her classrooms and interrupt her lunch period, where he continued to taunt her, and recruited other students to do the same.

Plaintiff alleges that due to the ongoing severe and relentless harassment by the perpetrator and others, AA was ultimately forced to leave the District and enroll in a different school.

2

This action – initially filed in New York State Supreme Court, Steuben County, and removed here – followed. Plaintiff alleges six causes of action in the complaint: (1) gross negligence, against all defendants; (2) negligent supervision, hiring, training and retention, against all defendants; (3) violation of the New York Child Victims Act, against all defendants; (4) negligent infliction of emotional distress, against all defendants; (5) violation of Title IX, against the District; and (6) violation of the New York Education Law, against the District. (Dkt. #14).

## DISCUSSION

### I.    Standard on a Motion to Dismiss

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), a court should "draw all reasonable inferences in [plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). In evaluating a motion to dismiss, the Court's consideration is generally limited to the pleadings, and to any documents attached or incorporated therein by reference. *See Baird v. Kingsboro Psychiatric Ctr.*, 2013 U.S. Dist. LEXIS 153701 at *6-*7 (E.D.N.Y. 2013).

### II.    First Cause of Action: Negligence or Gross Negligence

First, plaintiff generally alleges that the defendants breached their duty to provide AA with a safe and suitable school environment. This claim is dismissed, to the extent that it is duplicative of plaintiff's negligent supervision and negligent hiring, retention and training claims. The Court will address each of these claims below, in turn.

**III.      Second Cause of Action: Negligent Supervision, Hiring, Retention and Training**

Plaintiff alleges that the defendants all breached their duty to ensure a safe school environment, staffed by qualified and properly-trained employees, or to implement policies and procedures to safeguard student safety and adequate supervision.

**A.  Negligent Supervision (of Students)**

With respect to plaintiff's negligent supervision claim, it is well settled that under New York law, "[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 646 (E.D.N.Y. 2013). The attendant duty of care has been described as that of a "reasonably prudent parent," and as such, "school personnel cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among students daily . . . absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act." *Mirand v. City of New York*, 784 N.Y.2d 44, 49 (1994). Defendants argue that because plaintiff has not alleged that AA's harasser had any prior history of similar conduct, let alone that any of the defendants were aware of such a history and could have foreseen the assault against plaintiff, plaintiff has failed to state a claim for negligent supervision.

With respect to the initial assault on AA, the Court concurs. "In a case stemming from injuries caused by the acts of fellow students, a 'breach of duty is established only by showing that the defendant school had specific, prior knowledge of the danger that caused the injury, [such] that the third-party acts could reasonably have been anticipated.'" *Carabello*, 928 F. Supp. 2d 627, 647 (quoting *Smith v. Half Hallow Hills Centr. Sch. Dist.*, 349 F. Supp. 2d 521, 524 (E.D.N.Y. 2004)(internal quotation marks and citation omitted)). Plaintiff has not alleged that the perpetrator

4

was known to have had any prior history of similar conduct toward AA or others, or that his assault upon AA was otherwise foreseeable to any of the defendants. At most, plaintiff contends that defendant Peck *should* have observed during the assault that the perpetrator was sitting "inappropriately" close to AA and investigated the matter, whereupon he would have discovered what was happening and could have intervened to stop it. Plaintiff does not, however, plausibly allege that Peck had any actual knowledge of the assault as it was occurring, or that he had "sufficiently specific knowledge or notice of the dangerous conduct" to establish constructive knowledge of the potential for such an assault. *Brandy B. v. Eden Cent. Sch. Dist.*, 15 N.Y.3d 297, 302 (N.Y. Ct. App. 2010).

While plaintiff has failed to plausibly allege negligent supervision with respect to the initial assault on February 9, 2018, plaintiff also avers that thereafter, the District and the defendant employees were all made aware of the assault, and of the protective order that was in place to protect AA from further harassment. In spite of this, AA was reassigned to the perpetrator's study hall within a week, and the perpetrator thereafter repeatedly approached and verbally harassed AA, both in her classrooms and in the cafeteria, in clear violation of the protective order.

The Court notes that while plaintiff's allegations plausibly allege the foreseeability of the harasser's post-assault conduct, the complaint does *not* establish any factual connection between that conduct and any of the defendants by which causation of damages could be inferred. Specifically, plaintiff makes no claim that any of the individual defendants, or any other school administrators, agents or employees, personally observed or were otherwise made aware of the post-assault campaign of harassment against AA or her reassignment to her harasser's study hall, nor does the complaint describe the role that any of the defendants played or the authority they exercised with respect to those events.

As such, plaintiff's negligent supervision claims are insufficiently stated, and must be dismissed. However, because amplification of the relevant facts could well cure these deficiencies, in the interest of justice the Court will grant plaintiff leave to amend the complaint with respect to her negligent supervision claims concerning the defendants' acts and/or omissions *after* the initial assault on AA took place on February 9, 2018. *See generally C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 326-28 (E.D.N.Y. 2016)(denying summary judgment to district on plaintiff's negligent supervision claim, to the extent that it related to an ongoing pattern of in-school bullying following an initial unprovoked attack, where the plaintiff had repeatedly complained to teachers over time: the complaints gave the school constructive notice of the dangers to the student, and were therefore distinguishable from cases involving sudden or impulsive conduct a district could not have been expected to anticipate).

### B. Negligent Supervision, Hiring, Training and/or Retention (of Employees)

To state a claim for negligent supervision, hiring, training or retention of employees, a plaintiff must allege, in addition to the usual elements of negligence, that the defendant employer "knew of [an] employee's propensity to commit the alleged acts or that defendant should have known of such propensity had it conducted an adequate hiring procedure." *N.U. v. East Islip Union Free Sch. Dist.*, 2017 U.S. Dist. LEXIS 224461 at *60-*61 (E.D.N.Y. 2017). *See also Biggs v. City of New York*, 2010 U.S. Dist. LEXIS 121332 at *34 (S.D.N.Y 2010) (citations and internal quotations omitted). The employee must also have been acting *outside* of the scope of his or her employment. *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-130 (2d Cir. 2019)("[t]he employee also must not be acting within the scope of his or her employment . . . [otherwise] the employer [would] only be liable . . . vicariously under the theory of *respondeat superior*, [and] not for negligent supervision or retention"). *See also Shukla v. Deloitte Consulting LLP*, 2020 U.S.

Dist. LEXIS 104555 at *36 (S.D.N.Y. 2020)("liability for negligent hiring, retention, training or supervision typically arises only when an employee acts outside of the scope of his employment").

Here, plaintiff makes no allegation that the District had notice that any of the defendant employees had some propensity to ignore or fail to intervene in student-on-student sexual harassment, or that any school employee took any action outside the scope of their employment. Indeed, plaintiff makes no substantive argument in her opposition papers with respect to her negligent supervision hiring, training and/or retention claims concerning District employees.

Those claims are accordingly dismissed.

## IV.   Third Cause of Action: Violation of the New York Child Victims Act

Plaintiff also alleges that all of the defendants breached their statutory duties to plaintiff under the New York Child Victims Act, 2019 N.Y. Sess. Laws c. 11, §3 ("CVA"), which "reopened the state's statute of limitations to allow abuse victims additional time to assert claims that were otherwise barred by the passage of time." *Diocese of Buffalo v. Doe (In re Diocese of Buffalo)*, 618 B.R. 400, 403 (Bankr. W.D.N.Y. 2020).

Defendants argue that the CVA operated only to extend the statute of limitations for civil and criminal sexual abuse claims by child victims: it did not create a standalone cause of action. Plaintiff argues that the legislative history of the CVA suggests that it was meant, not only to expand the statute of limitations for civil causes of action arising out of sexual abuse against minors, but to expand liability for such crimes to any person or institution that negligently permitted such abuse to take place.

The Court disagrees. Other federal courts examining the scope of the CVA have determined that a party "cannot sue under the CVA because it creates no cause of action," but simply provides a "claim-revival mechanism" for certain sexual offenses under the New York

Penal Code. *Giuffre v. Dershowitz*, 2020 U.S. Dist. LEXIS 78596 at *7 (S.D.N.Y. 2020). *See generally Doe v. Poly Prep Country Day Sc.*, 2021 U.S. Dist. LEXIS 38349 at *2 (E.D.N.Y. 2021)(the CVA is a "claim-revival statute" enacted to "correct a perceived injustice, *i.e.*, that the statute of limitations for certain claims expired before child victims of sexual abuse recovered from past traumas to a degree sufficient to assert their rights").

The Court finds no expression of intent by the state legislature to expand the scope of liability (rather than simply the statute of limitations) for claims asserted under the auspices of the CVA, nor does it appear that any other federal courts examining the issue have found any such intent. Plaintiff's CVA claims are accordingly dismissed.

## V.    Fourth Cause of Action: Negligent Infliction of Emotional Distress

Plaintiff also alleges that the defendants subjected AA to the negligent infliction of emotional distress ("NIED").

Traditionally, assertion of a NIED claim under New York law required a plaintiff to allege: (1) extreme and outrageous conduct; (2) the defendant's disregard of a substantial probability of causing severe emotional distress; (3) a direct causal connection between the conduct and plaintiff's injury; and (4) severe emotional distress. *See Shukla*, 2020 U.S. Dist. LEXIS 104555 at *32; *Howell v. New York Post Co.*, 81 N.Y.2d 114, 121 (N.Y. Ct. App. 1993).

Defendants argue that the plaintiff's allegations fall short of describing "extreme" or "outrageous" conduct. Plaintiff responds that extreme and outrageous conduct is no longer considered an element of a NIED claim, citing *Taggert v. Costabile*, 14 N.Y.S.3d 388 (N.Y.2nd Dep't 2015). Plaintiff argues that the requisite elements are (1) a duty owed by defendant to plaintiff; and (2) a breach of that duty; (3) which directly (not consequentially) results in emotional harm; (4) and contains "some guarantee of genuineness." *Biehner v. City of New York*, 2021 U.S.

Dist. LEXIS 44003 at *26-*27 (S.D.N.Y. 2021). The "guarantee of genuineness generally requires that the breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety." *Id.*

It is clear from a review of relevant case law that state and federal courts are sharply divided on whether extreme and outrageous conduct is a necessary element of a NIED claim. *See Poppel v. Estate of Archibald*, 2020 U.S. Dist. LEXIS 92815 at *21 n.7 (S.D.N.Y. 2020)("New York state courts are split on the issue" of whether extreme and outrageous conduct is an element of a NIED claim, and "[c]ourts in this District are also split on this issue"); *Thomas v. City of New York*, 2018 U.S. Dist. LEXIS 189305 at *34 (E.D.N.Y. 2018)("there is a split of authority on th[e] question" of whether an NIED claim grounded in negligence requires pleading and proof of outrageous conduct). *Compare Virgil v. Darlak*, 2013 U.S. Dist. LEXIS 110411 at *28 (W.D.N.Y. 2013) (NIED claim requires a breach of duty to the plaintiff causing fear or risk or physical harm, and extreme and outrageous conduct) *and Xenias v. Roosevelt Hosp.*, 180 A.D.3d 588, 589 (N.Y. App. Div. 1st Dep't 2020)(collecting cases and finding that despite the contrary holding in *Taggert*, "[e]xtreme and outrageous conduct continues to be an essential element of a cause of action alleging [NIED]") *with Biehner*, 2021 U.S. Dist. LEXIS 44003 at *26-*27 (citing *Taggert* with approval, and listing the elements of an NIED claim based solely on emotional harm as: (1) a duty to the plaintiff; (2) breach of that duty; and (3) emotional harm resulting directly from the breach); *and Spencer v. Lab. Corp. of Am. Holdings*, 2020 U.S. Dist. LEXIS 223451 at *17-*18 (E.D.N.Y. 2020)(same); *and Stephanie L. v. House of The Good Shepherd*, 186 A.D.3d 1009, 1014 (N.Y. App. Div. 4th Dep't 2020)(extreme and outrageous conduct is not an essential element of a cause of action for NIED).

While the issue of whether extreme and outrageous conduct is an element of a NIED claim remains murky and unsettled, the Court need not wade into these uncharted waters. Regardless of the standard employed, "[a] claim for negligent infliction of emotional distress cannot be asserted if it is 'essentially duplicative of tort . . . causes of action.'" *Virgil*, 2013 U.S. Dist. LEXIS 110411 at *27 (quoting *Djangmah v. Falcione*, 2013 U.S. Dist. LEXIS 13597 at *28 (S.D.N.Y. 2013)). *See C.T.*, 201 F. Supp. 3d 307 at *327-*328 (dismissing NIED claim against school district by bullied student as duplicative of the student's negligent supervision claims).

The conduct that forms the bases for plaintiff's NIED claim is precisely the same conduct that underlies her claims of negligent supervision, and her allegations of a breach of duty, causation and resulting harm are identical for both. As such, her NIED claim is dismissed as duplicative.

## VI.   Fifth Cause of Action: Violation of Title IX (Student-on-Student Harassment)

Plaintiff contends that the District violated Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq. ("Title IX"), by acting with deliberate indifference to sexual harassment, and excluding AA from meaningful participation in school.

In order to state a claim for student-on-student harassment under Title IX, a plaintiff must plausibly allege that: (1) school authorities had actual knowledge of the harassment or the risk thereof; (2) they were deliberately indifferent to it; and (3) the harassment was so "severe, pervasive, and objectively offensive" that it deprived the student of access to the educational opportunities and benefits provided by the school. *Carabello*, 928 F. Supp. 2d 627 at 638.

Acknowledging "the inevitability of student misconduct" and the "practical realities of responding to student behavior," the Supreme Court has explained that this standard will not be met by "simple acts of teasing and name-calling," nor will it be met by a "single instance of one-on-one peer harassment" unless the instance is "serious enough to have the systemic effect of

denying the victim equal access to an educational program or activity." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 652-53 (1999). Thus, in determining whether the conduct alleged meets the "severe, pervasive, and objectively offensive" requirement, the Court must consider the "constellation of surrounding circumstances, expectations, and relationships," to determine whether the conduct alleged was sufficiently severe (even if infrequent), sufficiently frequent or pervasive (even if not as severe), or both, to have denied AA equal access to educational opportunities. *Davis*, 526 U.S. 629, 630 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

Courts assessing the severity and pervasiveness of student-on-student sexual harassment have found, with a few exceptions for extreme conduct such as rape, that a *single incident of harassment* is not sufficiently severe to state a cause of action under Title IX. Accordingly, cases examining student-on-student harassment have generally found that in order for a school district to incur liability based on a single event, the conduct at issue must be significantly more egregious in scale or violence than the kind of over-the-clothes groping or sexual comments alleged here. *Compare Carabello*, 928 F. Supp. 2d 627, 642-43 (student who pushed a female student against a wall, touched her breasts, legs and stomach outside of her clothing, and bit her neck, did not engage in conduct "sufficiently severe" to give rise to Title IX liability) *and Brodsky ex rel S.B. v. Trumbull Bd. of Educ.*, 2009 U.S. Dist. LEXIS 8799 (D. Conn. 2009) (where male touched female student's breasts and buttocks, and repeatedly engaged in name-calling, insults and physical harassment, conduct was "not sufficiently pervasive or severe from an objective standpoint" to deprive the victim of access to educational benefits and opportunities) *with T.Z. v. City of New York*, 634 F. Supp. 2d 263 (E.D.N.Y. 2009)(plaintiff demonstrated a triable issue of fact as to whether a one-time assault was sufficiently severe and pervasive to give rise to Title IX liability,

where student was held down, undressed and physically assaulted during a class while her screams for help were ignored by the supervising teacher, because an attack of this nature is "far removed from cases of simple inappropriate touching which, if made subject to Title IX liability, would result in a flood of litigation") *and M. v. Stamford Bd. of Educ.*, 2008 U.S. Dist. LEXIS 51933 at *24 (D. Conn. 2008)(rape of a disabled student by another student in a school basement is "precisely the type of action covered by Title IX").

In light of these precedents, the conduct plaintiff alleges in connection with the initial assault on AA – over-the-clothes touching and sexual comments – does not, as a matter of law, arise to the level of "severe and pervasive" harassment for which Title IX liability can attach to a one-time incident.

Furthermore, plaintiff has failed to plausibly allege that the District had actual knowledge of the assault on AA as it was occurring, or that the District had any preexisting knowledge of any propensity toward such conduct on the part of AA's harasser, or on the part of others in similar study hall settings, that would suggest the District was deliberately indifferent to a "substantial risk of serious harm." *Carabello*, 928 F.Supp.2d 627 at 638 (deliberate indifference can be shown by knowledge of a substantial risk of harm "where there have been multiple prior allegations of the same or similar conduct that is at issue"). To the contrary, plaintiff claims that the District was negligently *unaware* of the assault.

As such, plaintiff's allegations are insufficient to establish Title IX liability for the initial assault against AA, and to the extent her Title IX claim rests upon that assault, it must be dismissed.

The Court reaches a different conclusion, however, with respect to plaintiff's claim based on the District's alleged failure to protect AA from her attacker *after* the District was already aware

of the initial assault and the existence of the protective order.[1]  Even if the initial assault was not foreseeable, and was not severe enough to overcome its lack of pervasiveness for purposes of Title IX liability, the complaint plausibly alleges that the initial assault and resulting protective order placed the District on notice of the substantial risk of harm posed to AA by her harasser, that the several subsequent encounters between AA "and her attacker could create an environment sufficiently hostile to deprive [her] of access to educational opportunities," and that those encounters resulted from the District's failure to take reasonable steps to protect AA. *Kelly v. Yale Univ.*, 2003 U.S. Dist. LEXIS 4543 at *9-*10 (D. Conn. 2003) (university had a duty to prevent a student from encountering her rapist). Simply put, after the District "received notice of the [initial] harassing conduct, it had a duty under Title IX to take some action to prevent the further harassment" of AA, in a manner that was not "clearly unreasonable." *Id.*

Specifically, plaintiff claims that in contravention of its duty to protect AA and with deliberate indifference to the serious risk that AA's harasser would subject her to further harm, the District reassigned AA to her harasser's study hall within days, at which point he openly mocked and ridiculed her in front of other students for having reported the assault, and recruited other students to do the same. Plaintiff alleges that in the days that followed, the District permitted her harasser to "come and go" with impunity in her classrooms and during her lunch period, where she encountered and was menaced by him on multiple occasions. She alleges that as a result, AA suffered humiliation, shame, anxiety, guilt, depression, and emotional distress, lost all enjoyment of usual activities, and was ultimately forced to enroll in a different school in order to feel safe.

---

[1] Plaintiff's papers in opposition argue that the perpetrator's post-assault access to AA also violated a protective plan that was put in place by the District. Because the complaint makes no such allegations, the Court cannot appropriately consider these arguments in connection with the pending motions to dismiss under Fed. R. Civ. Proc. 12(b)(6).

These allegations of a pervasive, ongoing and unchecked campaign of harassment against AA by a much-older individual who the District was aware had sexually assaulted AA in school, and against whom a protective order had been issued, are sufficient to state a claim under Title IX against the District with respect to the post-assault incidents of harassment against AA by her attacker and by others he recruited. *See Davis*, 526 U.S. 629 at 651-53 (noting that relevant considerations in assessing severity and pervasiveness include the ages of the harasser and victim and the number of individuals involved, and denying summary judgment where victim alleged numerous incidents of offensive comments and touching to which the perpetrator ultimately pleaded guilty in criminal court); *Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 2d 219, 227 (D. Conn. 2006)(denying summary judgment on issue of severity and pervasiveness where student was subjected to daily harassment in public settings such as classrooms and hallways by multiple students).

Plaintiff's concrete allegations as to the negative effect of those encounters, which ultimately drove her to withdraw from school entirely and enroll elsewhere, plausibly indicate that she was thereby denied the opportunity to receive an education. *See Davis*, 526 U.S. 629 at 654.

The District's motion to dismiss plaintiff's Title IX claims arising out of the District's acts and omissions *after* the initial assault on AA is accordingly denied.

**VII.    Sixth Cause of Action: Violations of New York Education Law**

Finally, plaintiff alleges that the District violated Section 3201-a of the New York Education Law, as well as Section 10 et seq. of the New York Education Law (the Dignity For All Students Act, or "DASA"), by acting with deliberate indifference to AA's sexual harassment, failing to take prompt and effective steps to end it, and failing to implement appropriate policies to protect her from further harassment.

14

Section 3201-a of the New York Education Law provides that: "no person shall be refused admission into or be excluded from any course of instruction offered in the state public and high school systems by reason of that person's sex." N.Y. Educ. Law §3201-a. DASA states that: "[n]o student shall be subjected to harassment or bullying by . . . students on school property or at a school function; nor shall any student be subjected to discrimination based on a person's actual or perceived . . . gender, or sex by school employees or students on school property or at a school function." N.Y. Educ. Law §12.

It is well-settled that DASA created no explicit or implicit right of action, and the only district court in this Circuit that has examined the parallel language under N.Y. Educ. Law §3201-a has determined that it likewise does not contain any private right of action, either explicit or implied. *See T.J. ex rel. B.W. v. Bd. of Educ.*, 2019 U.S. Dist. LEXIS 171583 at *65-*66 (S.D.N.Y. 2019) (no private right of action under N.Y. Educ. Law §3201-a); *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 108 (N.D.N.Y. 2016) (DASA does not create a private right of action); *Benacquista v. Spratt*, 217 F. Supp. 3d 588, 603 (N.D.N.Y. 2016) (same); *C.T.*, 201 F. Supp. 3d 307 at 327 (same).

Because no private right of action can lie under DASA or §3201-a, plaintiff's claims under the New York Education Law must be dismissed.

## VIII.   Claims Against Defendant Chapman

Defendant Chapman makes an additional argument in favor of dismissal, based on her unique employment status with the District. Chapman asserts that she is not actually a District employee, and therefore owed AA no duty of care.

Chapman stated that she provides counseling services to the school under a contract between her employer, Catholic Charities, and the District, and thus had no duty to AA. Chapman

further argues that even if she *did* have some legal duty to AA as a matter of law, the complaint states no plausible cause of action against her. For example, as a counselor who did not work directly for the District, Chapman had no authority, let alone an obligation, to implement safety policies and procedures, to hire, train or supervise District employees, or to discipline AA's harasser.

Chapman also argues that to the extent plaintiff asserts that she "failed to inform" AA of the legal protections available under Title IX and/or DASA, or failed to report the incident to the school's DASA coordinator, plaintiff has not alleged any legal basis for such obligations under either statute. Chapman also notes that even if she *was* a school employee subject to DASA reporting requirements, she did, in fact, fully discharge those duties by notifying the principal, orally and in writing, the same day she learned of AA's report of harassment.

All of the claims against Chapman have already been dismissed, as set forth above, rendering her motion to dismiss moot at present.[2] Chapman's motion to dismiss (Dkt. #17) is accordingly denied.

**CONCLUSION**

For the reasons stated above, the motion by defendants to dismiss the Amended Verified Complaint (Dkt. #15) is granted in part, and denied in part.

Plaintiff's generalized claims of negligence and negligent infliction of emotional distress are dismissed with respect to all defendants, with prejudice, as duplicative of her negligent supervision claims.

---

[2] In any event, given that the Court's review of the instant motions is limited to the four corners of the complaint, it would be inappropriate for the Court to consider extraneous matters, such as Chapman's precise employment status, at this juncture.

Plaintiff's claims of: (1) negligent supervision pertaining to the initial February 9, 2018 assault on AA; (2) violation of Title IX pertaining to the initial February 9, 2018 assault on AA; (3) negligent hiring, training and retention; (4) violation of the Child Victims Act; and (5) violation of the New York Education Law, including the Dignity for All Students Act, are dismissed with respect to all defendants, with prejudice, as insufficiently stated.

Defendants' request to dismiss plaintiff's Title IX claim against the District based on the District's alleged acts and omissions *after* the February 9, 2018 assault on AA is denied.

Defendant Chapman's motion to dismiss (#16) is denied as moot.

Plaintiff's claim of negligent supervision based upon the defendants' acts and omissions *after* the February 9, 2018 assault on AA is dismissed with respect to all defendants, without prejudice, as insufficiently stated. Plaintiff is granted leave to file, within twenty (20) days of entry of this Decision and Order, a Second Amended Complaint reasserting and amplifying the factual grounds for her claim of negligent supervision of students relating to conduct *after* the initial assault upon AA, which should describe with specificity the duties owed by each defendant against whom the claim is asserted, the relevant acts and omissions attributable to each defendant, and their causal relationship to plaintiff's alleged damages.[3]

If plaintiff opts to file a Second Amended Complaint, defendants are directed to file their Answer within twenty (20) days of the filing of the Second Amended Complaint. If plaintiff does not file a Second Amended Complaint, defendants are directed to file their Answer to the

---

[3] Plaintiff may include, in the Second Amended Complaint, allegations initially made in support of her now-dismissed claims, to the extent they provide factual background. However, such allegations will not be deemed to resurrect any of the claims dismissed by this Decision and Order, except for plaintiff's claim of negligent supervision arising out of post-assault conduct, for which leave to amend has been granted as set forth above.

Amended Complaint (Dkt. #14) within twenty (20) days after plaintiff's time to file a Second

Amended Complaint has expired.

      IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 22, 2021.